1-21-0855-WC, Amalia Reyes, Appellant by Matthew Coleman v. Illinois Workers' Compensation Comm'n, Labor Attempts, Inc. Appellee by Jack Shanahan. Mr. Coleman, you may proceed. Good morning. May it please the court, justices, counsel. My name is Matthew Coleman and I represent the claimant in this matter, Ms. Amalia Reyes. The issue today is whether the commission's decision regarding the causation and extent of the claimant's lumbar condition was against the manifest weight of the evidence. Counsel, before you get into that, your opponent has a motion to strike several sections of your brief and argument on vocational assessment and maintenance benefits by reason of your failure to raise either issue between the arbitrator and the commission. Now I've looked at the stipulation sheet and I've looked at the transcript and I can't find where you raised either of those issues before the arbitrator or commission. Can you point me to something? What I can say, uh, Justice Hoffman is no, I can't point to anything within the stip sheet nor within, um, the issue being raised. However, um, what I'm requesting today is a modification of the permanency award and a finding regarding the causal, the causation of the, of the claimants of post-surgical status now, both maintenance as well as vocational assessments are rooted in section eight, eight of the act. And upon a hearing, a claimant is entitled to open benefits under section eight, eight of the act. Yeah, but don't you have to raise this before the commission so that the commission can rule on it? I mean, you never raised it. They filed the motion to strike. And quite frankly, as I look at this thing, their motion strikes well taken. You just simply didn't raise it. So you can't raise it for the first time on appeal. With regard to the maintenance benefits as well as vocational, um, you know, I concede your honor that those were not raised until the filing of this brief. However, I, I will rely on, uh, my position that all benefits that I'm claiming stem from section eight, eight of the act, and if there is a modification and a finding of a permanent disability, then eight, a would control. Well, wait a minute. If we were to do that, wouldn't we have to send it back to the commission for them to make a determination as to what the proper benefits are only if upon requesting the vocational assessment and demanding it, that it was denied, then I would, I could make that argument to the commission, just as if a case had been, um, in a, uh, in a ward for, um, benefits on permanency had been complete and a need for further medical treatment, uh, was required. And that was denied by the respondent following a decision from the commission. Okay. Go ahead, go ahead on your other issues. Now it's well settled that in resolving conflicts of medical evidence, it's the province of the commission to resolve such in such findings will not be disturbed unless it is contrary to the manifest way to the evidence. This case requires such modification justices to be clear. This is, this was not a 19 B a hearing for authorization of a surgery where there was a difference of opinions between the treater and the section 12 examiner regarding the impression of the MRI. It's not that, and that's because the surgery in this case had been done. So what we really have is the opinion of Dr. Levin versus Dr. Erickson's actual visual intraoperative findings. The commission ignored Dr. Erickson's intraoperative findings. And in fact, made no mention of it in its decision at all. Why is that important? Because the intraoperative findings of Erickson note quote, we indeed, we indeed did find comminuted fragments in the central and paracentral location on the right side. He further observed that after removing the fragments from the nerve, he observed the nerve pulsate freely. That's important. And what are we left at? Let's look at the medical evidence as a whole. First, we have a clean chain of events. A 39 year old woman with no history of lumbar complaints, able to work full duty in a job, which required constant turning, twisting, bending under time constraints, an injury, a real twisting injury in which was sufficient, which had sufficient enough force to cause immediate swelling to the claimant's right ankle, and she was immediately placed on non-weight bearing status. The very next day claimant presents with back complaints and from that time consistently reports low back pain radiating into the right buttock and posterior thigh, we have, we have an MRI study, which notes an L4, L5, five posterior central disc protrusion, an operative intra, an intraoperative finding from Erickson, which actually visualized the disc fragment impinging on the nerve, Erickson removing it and seeing it pulsate freely and relief noted by the claimant's subjective reports following the surgery. Mr. Kloman, if I can interject one question and certainly you can rely on and argue the chain of events. Are there any medical causation opinions presented in this case that are relevant to or address the claimant's lumbar spine condition as revealed by the December 12th, 2012 MRI? Are there any causation opinions regarding that? There is the response from Dr. Erickson in which he comments as to causation any comments on Dr. Levin's report. So Dr. Levin makes some flippant statements from his April 23rd, 2013 report. We've heard all of this before. He states the claimant's subjective complaints are out of proportion to the objective orthopedic pathology reports. He states her reports are not substantiated by true objective pathology. Counsel, that wasn't the question you were asked. You were asked, is there a causation opinion from a medical doctor anywhere in this record that her injuries are causally related to the event for which she seeks benefits? Anywhere? I know he doesn't agree. Erickson doesn't agree with Levin's report and Levin's assessment. But that's not the question. The question is, is there a causation opinion? My response is, uh, the claimant is presenting this on a, on a chain of events. So no, your honor. Okay. So there's no causation. We have a clean chain of events and we have versus the, the, um, opinion of, of Dr. Levin, who basically, um, calls the claimant a liar, right. Um, but it's important to note that, uh, Dr. Levin made these comments on April 23rd, 2013 about the objective pathology. Admittedly, before he ever reviewed the films to determine the presence of edge of objective pathology. So now with that in mind, the only way to reasonably deny benefits would be for the commission to make a finding that the claimant was being untruthful. In her reports of symptoms to her treaters, as well as in her testimony. But it made no such finding your honors. In fact, it did completely the opposite because it found that the claimant was credible with regard to a right foot injury and awarded all benefits stemming from that. So in light of the medical evidence as a whole, this time taking into consideration the actual intra operative findings, it's clear that the commission's decision is manifestly unreasonable and should be modified. To take into consideration the claimants post operative status. As causally related in terms of permanency, the claimant has been given 10 pound lifting restrictions from Dr. Erickson. She tried and was unable to, uh, work even as a cleaning person, um, under the circumstances. And she is a, a speaking, a Spanish speaking, uh, uh, primarily Spanish speaking, uh, individual with limited education. We prosecuted this as a, uh, 82 loss of trade. So, uh, I've outlined in my brief with a suggestion that, uh, in a ward, the, that the, in a ward be entered in favor of the claimant, um, as 60% man as a whole for loss of trade. So respectfully, um, I request that the decision of the circuit court be reversed and the decision of the commission be modified, making a finding of causation beyond the April 23rd report, uh, of Dr. Levin awarding medical benefits for such treatment, including the of the permanency benefit. Thank you. Thank you, Mr. Goldman. Any questions from the court? None. Okay. You'll have time in reply, Mr. Shanahan, you may respond. Thank you, your honor. May it please the court check Shanahan on behalf of the defendant, uh, labor temps, the arguments raised in the brief, uh, by plaintiff, as well as before the court today are simply a look at this evidence appellate court, and you will see that plaintiff should have gotten everything I'm asking for the standard of review, however, uh, is that the court has to look at whether the commission's decision is supportable by any evidence in the record. And for the plan to convince you, otherwise he has to show that the commission's decision is against the manifest way to the evidence, not the, they should have relied on this evidence instead of this evidence standard, uh, and I don't believe the, the arguments raised, uh, at any point, uh, go toward establishing anything close to that standard. What the commission did rely on in the record is the report of the accident, which was not disputed by the respondent, nor was the initial treatment and lost time and plaintiff that helpfully lays out on two occasions in his statement of facts, the progression of treatment and complaints at concentra from the point of injury to January 11 of 2013. And the court will note, uh, from reviewing the record or even plaintiff's brief that petitioners backstrain condition resolved as these things do over the course of several weeks, they initially got a little worse. Uh, she had some increased pain and then they got better. Uh, by January 13, uh, she's reporting, uh, trace occasional soreness. The doctor who had been treating her throughout this says that she has a resolved Lombard strain as of January 11, 2013, that's the evidence that the commission had, the respondents set up an exam for the petitioner, uh, for February of 2013, in which one can assume that Dr. Levin would have had the same opinion that he did when she finally showed up two months later after, after missing two appointments. So by January 11 of 2013, and shortly thereafter, barring, uh, the delay caused by petitioner's failure to appear for two exams, Dr. Levin comes to the same conclusion, which is amply demonstrated by the evidence. He also reviewed the MRI, uh, which did not show a herniation. He reviewed the films to supplement his initial review of the report. And it's also worth noting council goes through the April 13, uh, examination, 2013 IME date. Dr. Erickson examined the petitioner in April of 2013 as well, agreed with Dr. Levin's assessment of the MRI as to the lack of disc herniation or involvement, and further stated that she is not a surgical candidate. Now petitioner continues on a course of treatment. She's not back to work two months later when he sees her, he operates on her. So we have a complete gap in treatment right there. But even if plaintiff wants to rely on Dr. Erickson, he agreed with Dr. Levin in April of 2013, there's no disc herniation. There's no need for surgery. That's essentially the ballgame here. The petitioner did have an ankle injury that for which she continued to treat. The commission arbitrator and commission made that award. Respondent has paid that. Um, there's ample evidence in the record to support the commission's decision. And the commission could also rely on the fact that petitioner's testimony is completely contradicted by not corroborated by the contemporaneous concenter records. She said, as of January 11th, 2013, she was on crutches. She was incredible pain. There was a note in November of 2012 that she was no longer on crutches. And again, the, uh, outline of treatment from November to December, to January of 2013 demonstrates the objective medical evidence and the conclusions by Dr. Bot and concentra that her lumbar spine strain had been solved. The commission's award is entirely in line with the record. There is evidence, ample evidence to support it. And on behalf of the respondent, defendant labor temps, we would ask that you affirm the circuit court and commission's decisions in all respects. Thank you. Any questions from the court? No, no. Thank you, Mr. Shanahan, Mr. Coleman, you may reply. Mr. Mr. Coleman, I just want to be clear once again, is that, um, claim it reported, um, consistent symptoms on the right side and the low back, um, the intraoperative findings corroborate that, um, she will be left with, uh, these outstanding bills regardless. Um, and I will rely or I will end how I generally start and point out that the, uh, workers compensation act is remedial in nature. And this was a, um, claimant, um, who. Socioeconomic status, um, in which she presented to certain doctors, um, you know, the remedial nature of the act with that. Thank you. And thank you, Mr. Coleman. Thank you. Counsel both for your arguments in this matter, it will be taken under advisement.